UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DENNIS MAYFIELD,

      Petitioner,

v.

M. E. SPEARMAN, Warden,

      Respondent.

Case No.  2:17-cv-06536-RGK-KES

REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE

This Report and Recommendation is submitted to the Honorable R. Gary Klausner, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## INTRODUCTION

On September 5, 2017, Petitioner filed his Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (the "Petition"). (Dkt. 1.)  In 2015, a jury convicted Petitioner of several crimes based on testimony by Pamela L. ("Pamela") that Petitioner forced her and their one-year-old son into

a car, drove to a minimart, and forced her to withdraw $500 from an ATM at gunpoint.  (See Dkt. 11-14, Lodged Document ["LD"] 6 [opinion of California Court of Appeals]; see also Dkt. 11-2 at 89-98, LD 1, 2 Clerk's Transcript ["CT"] 286-95 [verdict forms].)  Petitioner was sentenced to life with eligibility for parole after seven years for violating California Penal Code section 209 (aggravated kidnapping) and a determinate term of 9 years and 8 months as to the other counts on which the jury found him guilty.  (Dkt. 11-2 at 144-52, LD 1, 2 CT 357-65 [minute order of sentencing hearing and abstract of judgment].)  Respondent filed an answer to the federal Petition on November 27, 2017.  (Dkt. 10.)  Petitioner filed a traverse with exhibits on January 25, 2018.  (Dkt. 17, 18.)

For the reasons set out below, the Court recommends denying the Petition.

## II.

## FACTUAL BACKGROUND

The underlying facts are taken from the unpublished California Court of Appeal decision on Petitioner's direct appeal.  (Dkt. 11-14, LD 6); People v. Mayfield, No. B268348, 2017 Cal. App. Unpub. LEXIS 1375, at *1-2 (Feb. 24, 2017).  Unless rebutted by clear and convincing evidence, these facts may be presumed correct.  Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008); 28 U.S.C. § 2254(e)(1).

At trial, the prosecution presented evidence to establish [Petitioner] kidnapped the mother of his children, [Pamela], to obtain money from her by robbery.  … Pamela testified [Petitioner] came to her house in February 2014, ostensibly to visit his children. When he arrived, however, he demanded money, they argued, he punched her, and he held a gun to her head and threatened to kill her unless she gave him money.  [Petitioner] then forced Pamela and their one-year-old son into a car and they drove to a gas station minimart, where he forced her to withdraw $500 from an ATM.

1  [Petitioner] testified at trial, and he contradicted Pamela's
2  account of events.  He denied he ever hit Pamela, held a gun to her
3  head, or threatened to kill her; in fact, [Petitioner] asserted he did not
4  have a gun at all during the time he was with Pamela.  According to
5  [Petitioner], it was Pamela who proposed going to withdraw money
6  from the ATM, and she did so voluntarily.

7  The jury believed Pamela, not [Petitioner] – convicting him of
8  kidnapping to commit robbery in violation of section 209, subdivision
9  (b), plus several other charged offenses.

10  (Dkt. 11-14, LD 6 at 2-3); Mayfield, 2017 Cal. App. Unpub. LEXIS 1375, at *1-2.

## III.

## PROCEDURAL HISTORY

Petitioner appealed, raising as his sole claim of error that California Penal Code section 209(b) was unconstitutionally vague, following the rationale of Johnson v. United States, __U.S. __, 135 S. Ct. 2551 (2015).  (Dkt. 11-11, LD 3 [opening brief in case no. B268348].)  At the time of Petitioner's conviction, Penal Code section 209(b) penalized kidnapping an individual to commit robbery if the perpetrator moved "the victim … beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended [robbery] offense."  Cal. Pen. Code § 209(b)(2) (2015); see also id., § 209(b)(1) ("Any person who kidnaps or carries away any individual to commit robbery … shall be punished by imprisonment in the state prison for life with the possibility of parole.").

The California Court of Appeal rejected Petitioner's "void for vagueness" argument, reasoning as follows:

The constitutional interest implicated in questions of statutory vagueness is that no person be deprived of "life, liberty, or property without due process of law," as assured by both the federal

3

Constitution (U.S. Const., Amends. V, XIV) and the California Constitution (Cal. Const., art. I, § 7). … A statute is void for vagueness if it does not define the proscribed offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." (Kolender v. Lawson (1983) 461 U.S. 352, 357, ….)

In Johnson, the United States Supreme Court did not confront the meaning of the [Armed Career Criminal Act or "ACCA"] residual clause for the first time. Rather, the high court had already held the ACCA's definition of the term "violent felony," which incorporates the residual clause, must be construed according to what is known as the categorical approach. (Johnson, supra, __ U.S. at p. __ [135 S. Ct. at p. 2557].) "Under the categorical approach, a court assesses whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.' [Citation.] [¶] Deciding whether the residual clause covers a crime thus requires a court to picture the kind of conduct that the crime involves 'in the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." (Ibid.)

The counterfactual nature of this inquiry is what gave rise to the vagueness problem that Johnson held fatal to the residual clause. The high court reasoned there was "grave uncertainty" about how to estimate the risk posed by a crime in an imagined, ordinary case because it was unclear how to determine what kind of conduct is involved in an ordinary case of a crime. (Johnson, supra, __ U.S. at p. __ [135 S. Ct. at p. 2557].) In addition, the Johnson court explained

the residual clause's "serious potential risk of physical injury" standard was "imprecise," and that imprecision left too much uncertainty about how much risk is necessary for a crime to qualify as a violent felony when the standard is applied not to "real-world facts" but rather to a "a judge-imagined abstraction."  (Id. at p. 2558.)

[…]

In this case, the language of section 209, subdivision (b)(2) requires juries and courts to apply a legal standard to real-world facts, and that makes all the difference for purposes of resolving the constitutional question presented.   Unlike the residual clause in Johnson, there is no hypothetical "ordinary" case that determines the statute's applicability – rather, the jury in this case (like juries in all aggravated kidnapping cases) assessed whether defendant was guilty of aggravated kidnapping based on the evidence, specifically, the evidence concerning his movement of Pamela on the day in question. That is precisely the type of determination that is beyond void-for-vagueness reproach according to Johnson itself.  (Johnson, supra, __ U.S. at p. __ [135 S. Ct. at p. 2561] ["As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly … some matter of degree'"]; accord, Welch v. United States (2016) __ U.S. __, [136 S. Ct. 1257, 1262, 194 L. Ed. 2d 387 ["The Court's analysis in Johnson thus cast no doubt on the many laws that 'require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion'"].)

That there are Court of Appeal opinions both affirming and reversing aggravated kidnapping convictions is not, as [Petitioner]

believes, evidence the statute can be applied only by "guesswork."  As Johnson recognizes, "even clear laws produce close cases" (Johnson, supra, __ U.S. at p. __ [135 S. Ct. at p. 2560]), and the existence of what some might view as divergent results from case to case is not sufficient reason to conclude a criminal statute is vague.  Rather, it was the more fundamental "disagreement about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider" (ibid.) that served to confirm the residual clause at issue in Johnson was "hopeless[ly] indetermin[ate]" (id. at p. 2558).  By contrast, there is broad agreement in California case law on both the nature of the inquiry required and the relevant factors to evaluate when deciding whether the facts in a given case are sufficient to satisfy the asportation element of the aggravated kidnapping statute.  (See, e.g., People v. Dominguez (2006) 39 Cal.4th 1141, 1152 … [considerations relevant to assessing whether there is an increased risk of harm to a victim include whether movement of the victim decreases the likelihood of detection, increases the danger inherent in the victim's foreseeable attempts to escape, or enhances the attacker's opportunity to commit additional crimes].)

Thus, for purposes of the aggravated kidnapping statute, Johnson changes nothing.  As Daniels explained more than 40 years ago, "[t]he law is replete with instances in which a person must, at his peril, govern his conduct by such nonmathematical standards as 'reasonable,' 'prudent,' 'necessary and proper,' 'substantial,' and the like," and "standards of this kind are not impermissively vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind." (Daniels, supra, 71 Cal.2d at pp. 1128-1129.)  Ordinary people can understand the conduct prohibited

1   by the kidnapping to commit robbery statute, and it does not encourage

2   discriminatory enforcement.  We therefore reject [Petitioner's] void-

3   for-vagueness challenge.

4   (Dkt. 11-14, LD 6 at 6-10); <u>Mayfield</u>, 2017 Cal. App. Unpub. LEXIS 1375, at *6-

5   11.

6       After losing in the Court of Appeal, Petitioner filed a petition for review in

7   the California Supreme Court raising the same issue.  (Dkt. 11-15, LD 7.)  It was

8   summarily denied.  (Dkt. 11-16, LD 8.)

9                                   **IV.**

10                                  **CLAIMS**

11      Petitioner now asserts the same claim in his § 2254 Petition, i.e., that

12  California Penal Code section 209(b)(1) is void for vagueness in violation of the

13  Fourteenth Amendment's Due Process Clause.  (Dkt. 1 at 5.)

14                                   **V.**

15                          **STANDARD OF REVIEW**

16      Under the Antiterrorism and Effective Death Penalty Act of 1996, as

17  amended ("AEDPA"), Petitioner is entitled to habeas relief only if the state court's

18  decision on the merits "(1) resulted in a decision that was contrary to, or involved

19  an unreasonable application of, clearly established Federal law, as determined by

20  the Supreme Court" or "(2) resulted in a decision that was based on an

21  unreasonable determination of the facts in light of the evidence presented in the

22  State court proceeding."  28 U.S.C. § 2254(d); <u>Cullen v. Pinholster</u>, 563 U.S. 170,

23  181 (2011).

24      The relevant state court decision is the last reasoned decision, which here is

25  the decision of the California Court of Appeal.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797,

26  806 (1991).  The relevant "clearly established Federal law" consists of only

27  Supreme Court holdings (not dicta), applied in the same context that petitioner

28  seeks to apply it to, existing at the time of the relevant state court decision.  <u>Premo</u>

1  v. Moore, 562 U.S. 115, 127 (2011).

2          A state court acts "contrary to" clearly established Federal law if it applies a

3  rule contradicting the relevant holdings or reaches a different conclusion on

4  materially indistinguishable facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).  A

5  state court "unreasonably appli[es]" clearly established Federal law if it engages in

6  an "objectively unreasonable" application to the facts of the correct governing

7  legal rule.  White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1705-07 (2014)

8  (rejecting previous construction of § 2254(d) that a state court decision involves an

9  unreasonable application of clearly established Supreme Court law if the state

10  court "unreasonably refuses to extend a legal principle to a new context where it

11  should apply").  Habeas relief may not issue unless "there is no possibility

12  fairminded jurists could disagree that the state court's decision conflicts with [the

13  United States Supreme Court's] precedents."  Harrington v. Richter, 562 U.S. 86,

14  103 (2011).  "[T]his standard is 'difficult to meet,'"  Metrish v. Lancaster, 569 U.S.

15  351, 357-58 (2013), as even a "strong case for relief does not mean the state

16  court's contrary conclusion was unreasonable."  Richter, 562 U.S. at 102.

## VI.

## DISCUSSION

**A.    Petitioner's Request for Judicial Notice.**

20          In conjunction with his reply, Petitioner submitted a motion asking the Court

21  to take judicial notice of certain documents attached to the motion.  (Dkt. 18.)

22  These documents include documents related to legislative history and portions of

23  the appellate brief filed by Petitioner's counsel in the California Court of Appeal.

24  (Id. at 5-48.)[1]  Petitioner's request for judicial notice is GRANTED and the

25  undersigned has considered the documents where they are pertinent to Petitioner's

26  _____

27          [1] Respondent has separately lodged a complete copy of this brief.  (Dkt. 11-
   11, LD 3.)

28

1   arguments.  See generally Fed. R. Evid. 201(b); Korematsu v. United States, 584 F.

2   Supp. 1406, 1414 (N.D. Cal. 1984) ("courts frequently take judicial notice of

3   legislative history, including committee reports").

4   **B.**   **The Void for Vagueness Doctrine.**

5        A criminal statute is unconstitutionally vague in violation of the Fourteenth

6   Amendment's Due Process Clause if it "fails to give a person of ordinary

7   intelligence fair notice that his contemplated conduct is forbidden by the statute.

8   The underlying principle is that no man shall be held criminally responsible for

9   conduct which he could not reasonably understand to be proscribed." United

10   States v. Harriss, 347 U.S. 612, 617 (1954).  This standard is clearly established

11   federal law for purposes of habeas review under § 2254(d)(1).  See Rose v. Locke,

12   423 U.S. 48, 49-50 (1975) (per curiam) (citing and applying the standard

13   articulated in Harriss to a challenge raised against a state criminal statute on habeas

14   review); Ochoa v. Davis, No. 99-11129-DSF, 2016 WL 3577593 at *57, 2016 U.S.

15   Dist. LEXIS 85532 at *179 (C.D. Cal. June 30, 2016) (noting that the "person of

16   ordinary intelligence" standard is "clearly established federal law").

17        It is also well established that "vagueness challenges to statutes which do not

18   involve First Amendment freedoms must be examined in the light of the facts of

19   the case at hand.'" United States v. Powell, 423 U.S. 87, 92 (1975) (quoting

20   United States v. Mazurie, 419 U.S. 544, 550 (1975)).  The Supreme Court has

21   explained that "this prohibition against excessive vagueness does not invalidate

22   every statute which a reviewing court believes could have been drafted with

23   greater precision." Rose, 423 U.S. at 49.  Moreover, "[t]he judgment of federal

24   courts as to the vagueness or not of a state statute must be made in the light of prior

25   state constructions of the statute.  …  When a state statute has been construed to

26   forbid identifiable conduct …, claims of impermissible vagueness must be judged

27   in that light." Wainwright v. Stone, 414 U.S. 21, 22 (1972).

28

**C.** **The California Court of Appeal Reasonably Rejected Petitioner's Claim.**

     **1.** **Summary of Petitioner's Legal Argument.**

Petitioner argues that California's aggravated kidnapping statute, Penal Code section 209(b)(2), does not give fair notice to ordinary people of the conduct it punishes. (Dkt. 1 at 20.) His argument relies on <u>Johnson</u>'s vagueness analysis of the ACCA, which permitted enhanced sentences for three prior convictions for a "violent felony," a term defined in the residual clause to include any felony that that "involves conduct that presents a serious potential risk of physical injury to another." <u>Johnson</u>, 135 S. Ct. at 2555 (quoting 18 U.S.C. § 924(e)(2)(B)). Applying the residual clause thus required "a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." <u>Id.</u> at 2257 (citing <u>James v. United States</u>, 550 U.S. 192, 208 (2007)). The <u>Johnson</u> Court concluded, "By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." <u>Id.</u> at 2558.

Petitioner argues that the same problem renders California's aggravated kidnapping statute unconstitutional. Petitioner cites California law establishing a two-prong test for aggravating kidnapping: (1) whether the movement of the victim is merely incidental to the commission of the aggravating offense (which for Petitioner was robbery[2]), and (2) whether the movement "substantially increase[d] the risk of harm over and above that necessarily present in the crime of robbery." (<u>Id.</u> at 26, citing <u>People v. Rayford</u>, 9 Cal. 4th 1, 12 (1994).) <u>Rayford</u> explains the

---

[2] The aggravating offenses are listed in the statue, and they include not only robbery, but also rape, sodomy, lewd acts against children, and other crimes. Cal. Pen. Code § 209(b)(1).

1  two prongs as follows:

2         As for the first prong, or whether the movement is merely
3  incidental to the crime of robbery, the jury considers the "scope and
4  nature" of the movement.  (People v. Daniels, supra, 71 Cal.2d at p.
5  1131, fn. 5.)  This includes the actual distance a victim is moved. …
6  [W]e have since Daniels, supra, analyzed the question of whether the
7  movement was incidental to the commission of the underlying crime
8  by considering the context of the environment in which the movement
9  occurred. …

10        The second prong of the Daniels test refers to whether the
11  movement subjects the victim to a substantial increase in risk of harm
12  above and beyond that inherent in robbery.   This includes
13  consideration of such factors as the decreased likelihood of detection,
14  the danger inherent in a victim's foreseeable attempts to escape, and
15  the attacker's enhanced opportunity to commit additional crimes.

16  Rayford, 9 Cal. 4th at 12-13 (citations omitted).

17        Petitioner's argument focuses on the second prong.  To find increased risk in
18  the context of a robbery, Petitioner argues that jurors must first have in mind some
19  level of risk that is present during a robbery (i.e., the "baseline risk"), and then find
20  that the defendant, by moving the victim, created a greater risk.  (Dkt. 1 at 26.)
21  Petitioner argues that the jury lacks any objective standards to determine the
22  baseline risk.  (Id. at 25-26 ["[W]ho can say what is the risk of harm in any given
23  robbery …?"].)  Petitioner argues that this is no different from the "judicially
24  imagined 'ordinary case' of a crime" that rendered the ACCA unconstitutional per
25  Johnson.  (Id. at 22, citing Johnson, 135 S. Ct. at 2557.)

26        **2.     Analysis of the California Court of Appeal's Decision.**

27        The Court of Appeal found the residual clause of the ACCA distinguishable
28  from California's aggravated kidnapping statute, making the reasoning of Johnson

1    inapplicable.  Per the relevant excerpts from the decision cited above, the Court of

2    Appeal found that to determine the baseline risk, jurors did not need to

3    conceptualize the risk inherent in an imaginary, "ordinary" robbery.  Rather, they

4    needed to consider "real-world facts," i.e., how Petitioner actually interacted with

5    Pamela, and then decide whether Petitioner's forced movement of Pamela from the

6    house to the car to the minimart substantially increased the risk of harm as

7    compared to the risk that would have existed absent such movement.  (See Dkt. 11-

8    14, LD 6 at 6-10.)  The Court of Appeal concluded that asking the jury to apply an

9    imprecise legal standard (such as "substantially increased risk") to real-world facts

10   does not violate the Due Process Clause.  (Id. at 9-10, citing examples of

11   constitutional imprecise, qualitative legal standards such as "reasonable" and

12   "prudent").

13        Initially, it should be noted that Johnson's holding expressly applied only to

14   the residual clause of the ACCA, not the California aggravated kidnapping statute

15   under which Petitioner was convicted.  Because the Supreme Court has not

16   extended Johnson outside the context of the ACCA, the California court's decision

17   not to extend Johnson to invalidate Cal. Pen. Code § 209(b) was not contrary to or

18   an unreasonable application of "clearly established" federal law under

19   § 2254(d)(1).  The Supreme Court has held that AEDPA "does not require state

20   courts to extend [Supreme Court] precedent or license federal courts to treat the

21   failure to do so as error. … Thus, if a habeas court must extend a rationale before it

22   can apply to the facts at hand, then by definition the rationale was not clearly

23   established at the time of the state-court decision."  White v. Woodall, __ U.S. __,

24   134 S. Ct. 1697, 1706 (2014) (citation and quotation marks omitted); see, e.g.,

25   Dotson v. California, No. 17-03907-SJO (SK), 2017 U.S. Dist. LEXIS 105457 at

26   *3 (C.D. Cal. June 9, 2017) (holding petitioner could not rely on Johnson to

27   establish alternative trigger date for AEDPA statute of limitations under

28   § 2244(d)(1)(c) because Johnson "is not applicable to Petitioner's state sentence

1   under the California Penal Code" and the petitioner "could have made his void-for-

2   vagueness argument sooner, within the limitations period, irrespective of

3   Johnson"); Martin v. Fox, No. 16-09311-RSWL (JDE), 2017 WL 3588747 at *3,

4   2017 U.S. Dist. LEXIS 132691 at *6 (C.D. Cal. June 2, 2017) (dismissing petition

5   as successive but also noting it "suffer[ed] from substantive problems" because

6   Johnson was inapplicable where the petitioner "was not sentenced under the

7   ACCA's residual clause or a similar state law equivalent"), recommendation

8   adopted at 2017 WL 3588738 (C.D. Cal. Aug. 16, 2017).

9        Moreover, the Court of Appeal did not unreasonably apply United States

10  Supreme Court precedent in ruling that (1) Penal Code section 209(b)(2) requires

11  jurors to consider real-world facts rather than imaginary "ordinary" crimes, and

12  (2) the Due Process Clause permits jurors to apply imprecise, qualitative legal

13  standards to real-world facts.  The Johnson court itself distinguished the ACCA's

14  residual clause from statutes that "use terms like 'substantial risk,' 'grave risk,' and

15  'unreasonable risk,'" and described those laws as requiring jurors to "gaug[e] the

16  riskiness of conduct in which an individual defendant engages *on a particular*

17  *occasion*."  Johnson, 135 S.Ct. at 2561.  The Johnson Court added that it did "not

18  doubt the constitutionality of [such] laws that call for the application of a

19  qualitative standard such as 'substantial risk' to real-world conduct …."  Id.

20       The Court of Appeal reasonably determined that California's aggravated

21  kidnapping statute is exactly the kind of statute Johnson distinguished from the

22  ACCA and called constitutional.  A person of ordinary intelligence would

23  understand that moving Pamela at gunpoint to the minimart increased the risk of

24  harm by exposing all the other minimart employees and customers to the risk of

25  being shot.  Thus, a person of ordinary intelligence would be on notice that their

26  conduct was proscribed by section 209(b).  See People v. Ledesma, 14 Cal. App.

27  5th 830, 835-40 (2017) (rejecting vagueness challenge to § 209(b) based on

28  Johnson, reasoning, "Unlike the residual clause at issue in Johnson, California's

13

asportation requirement compels juries and courts to apply a legal standard to real world facts. … Unlike the categorical analysis courts were required to engage in under the ACCA, the asportation requirement[] in section[] 209 … require[s] no hypothetical case of the underlying crime that undermines the statutes' applicability."); see also Xatruch v. Uribe, No. 10-5551-JAK (RNB), 2011 WL 3235740 at *15-19, 2011 U.S. Dist. LEXIS 81997, at *45-61 (C.D. Cal. May 17, 2011) (rejecting "void for vagueness" challenge to Penal Code section 209(b)); Ek-Luna v. Adams, No. 09-0726, 2010 WL 1927657 at *10-12, 2010 U.S. Dist. LEXIS 52159, at *30-33 (N.D. Cal. May 12, 2010) (same).  Because the California Court of Appeals' finding that Johnson was inapplicable to section 209(b) was not unreasonable, Petitioner is not entitled to federal habeas relief.

## VII.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED:  February 06, 2018

_Karen E. Scott_
KAREN E. SCOTT
United States Magistrate Judge

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to timely file Objections as provided in the Federal Rules of Civil Procedure and the instructions attached to this Report. This Report and any Objections will be reviewed by the District Judge whose initials appear in the case docket number.

14